# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 22-447C
(Filed: May 5, 2023)

|  |  |
|---|---|
| **MIDATLANTIC CONSTRUCTION & DESIGN ASSOCIATES, INC.**, | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **UNITED STATES**, | ) ) ) |
| *Defendant.* | ) |

*Ruth E. Ganister*, Rosenthal and Ganister, LLC, West Chester, PA, for plaintiff.

*Robert C. Bigler*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

### OPINION AND ORDER[1]

***BONILLA, Judge***.

Pending before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) (ECF 6). The crux of the government's motion is that plaintiff failed to timely submit a duly certified claim to the contracting officer under the Contract Disputes Act (CDA), 41 U.S.C. § 7103. Noticeably absent from both parties' briefs is a citation to–let alone any discussion of–*Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014), wherein the United States Court of Appeals for the Federal Circuit squarely held: "§ 7103

---

[1] This case was transferred to the undersigned for adjudication on March 1, 2023, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC).

is not jurisdictional and need not be addressed before deciding the merits." *Id.* at 1322.  For the reasons set forth below, defendant's motion is DENIED.

## BACKGROUND

On September 21, 2012, the U.S. Department of Defense, Defense Logistics Agency (DLA) awarded Midatlantic Construction & Design Associates, Inc. (MCDA) a nearly $3 million firm fixed-price construction contract to repair and upgrade fire sprinkler systems in 38 government facilities located in New Cumberland and Mechanicsburg, Pennsylvania.[2]  The scheduled contract performance period was October 2, 2012, through September 30, 2013 (i.e., Fiscal Year 2013).  Due to contested delays (e.g., building access and accessibility, stop work orders, response time for requests for information and change orders, inspections, differing site conditions, availability of government personnel, weather conditions, government furlough, subcontractor demobilization and remobilization) and disputed contract requirements (e.g., delivery and format of construction and maintenance drawings), performance continued through February 10, 2015.

Two years later, on May 8, 2017, MCDA submitted a request for equitable adjustment (REA) in the amount of $405,929.21 for "unabsorbed corporate overhead costs incurred as a result of the changes and delays experienced under [the DLA] contract."[3]  *See* ECF 1-2 at 25.[4]  The contractor specifically noted that the request did not include $108,180.93 in "jobsite unabsorbed overhead costs" purportedly incurred and "not recovered through the various modifications to the contract."  *See id.*  In closing, the REA states:

> We are willing to discuss this request for equitable adjustment with you, and we are willing to meet with you concerning the same. We are submitting this request as a Request for Equitable Adjustment (REA). It is our understanding that your agency is willing to review and resolve this matter with MCDA on that basis. However, we reserve the right to present this request as a formal claim pursuant to the

---

[2] The record presented indicates the small business set aside contract ultimately involved work in 41 DLA buildings.

[3] Although dated May 8, 2017, MCDA's REA was reportedly received by DLA on May 17, 2017.  In their exchange of correspondence, the parties refer to the REA based upon the date submitted and date received, respectively.  For clarity, and consistent with the parties' briefs, the Court adopts the document date and cites the document as the "May 8, 2017 REA."

[4] MCDA appended a series of documents to its complaint as well as its response to defendant's motion to dismiss.  In ruling upon a motion to dismiss under RCFC 12(b)(1), the Court may consider matters outside the complaint.  *See Alisud-Gesac Handling-Servisair 2 Scarl v. United States*, 161 Fed. Cl. 655, 662 (2022) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)), *appeal docketed*, No. 23-1087 (Fed. Cir. filed Oct. 27, 2022).

> Contract Disputes Act. We would appreciate your early review of this matter.
>
> As noted, should we receive any claims from vendors and subcontractors concerning this job, we reserve the right to amend this REA to include the same. We also reserve the right to amend this REA to include jobsite unabsorbed overhead as appropriate.
>
> We will contact you to set a time to discuss this matter with you further.

*Id.* at 36. The REA does not include a certification or any representations regarding the nature and accuracy of the information included or the identity or authorization of the author.

Over the next four years, MCDA engaged DLA and the Defense Contract Audit Agency (DCAA) in intermittent communications regarding the sufficiency of MCDA's supporting documentation, the allowability of certain costs, and the REA's missing certification. *See, e.g.*, ECF 1-2 at 40–41, 43–44, 46–47, 49, 51–53, 55–56, 61; ECF 1-3 at 2–8, 10–11, 13–14, 16–17; *see also* ECF 1-5 at 3–5 ("Timeline of Correspondence"). In the interim, on November 2, 2018, MCDA met with DLA and DCAA officials, at which time the contracting officer recommended MCDA engage professional assistance to substantiate the REA. *See* ECF 1 ¶ 30; ECF 8 at 48–49 ¶ 9. Two years and two months later, on January 8, 2021, MCDA requested the opportunity to submit a revised REA. *See* ECF 1-3 at 16. DLA authorized MCDA's request and then twice extended the submission deadline to March 1, 2021. *See* ECF 1-3 at 19, 21–22.

On March 1, 2021, MCDA submitted a revised REA seeking to recover $855,038 in alleged unforeseen increases in labor, equipment, and overhead costs attributable to government (in)actions and delays. *See* ECF 1-4. The revised REA more than doubled MCDA's initial request of $405,929.21 and presents different valuations and calculations. Signed by MCDA's President, the revised REA includes the following certification: "I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief." *Id.* at 16. The revised REA does not formally request a contracting officer's final decision.

The DLA contracting officer rejected MCDA's submission on March 22, 2021, explaining that MCDA changed its theory of recovery without providing the documentary proof necessary to substantiate the requested equitable adjustment. *See* ECF 1-5 at 2–5. After outlining the protracted effort to resolve MCDA's May 8, 2017 REA, the contracting officer closed, stating:

3

> . . . both DLA and DCAA exerted a considerable amount of time and effort assisting MCDA in submitting an adequate REA proposal. From the outset of this effort, however, MCDA failed to reciprocate in its efforts to provide substantiating documentation to support its REA. At this point, and given that MCDA abandoned its REA for over two years and then provided no new information to support its revised REA, DLA believes that any further discussion concerning this matter is no longer fruitful. Accordingly, DLA has concluded its review of this matter.

*Id.* at 5.

On April 1, 2021, MCDA requested that DLA reconsider the decision not to perform a substantive review or DCAA audit of MCDA's March 1, 2021 revised REA. *See* ECF 1-5 at 7–8. Citing DLA's initial allowance of the revised REA and subsequent extension of the submission deadline, MCDA asserted the government was acting in "bad faith" in not considering the revised REA. *See id.* at 8. At a minimum, MCDA concluded, the contractor was entitled to a contracting officer's final decision from which to "take an appropriate appeal." *Id.* On May 6, 2021, following DLA's refusal to issue a final decision citing MCDA's failure to file a formal CDA claim, MCDA's President requested a final decision and executed the following certification:

> I certify that the claim as submitted and revised under cover of our letter of March 1, 2021 is made in good faith; that the supporting data are accurate and complete to the best of Midatlantic's knowledge and belief and that the amount requested accurately reflects the contract adjustment for which Midatlantic believes the Government is liable. As President of Midatlantic I have the authority to provide this certification.

ECF 1-5 at 15; *see id.* at 10–11. On May 20, 2021, the contracting officer refused to consider the matter further, citing the previously noted defects in MCDA's prior submissions and the expiration of the six-year statute of limitations governing CDA claims. *See id* at 17.

## DISCUSSION

### I.  Standard of Review

To withstand a motion to dismiss filed under RCFC 12(b)(1), plaintiff must demonstrate by a preponderance of the evidence that the Court possesses subject matter jurisdiction. *J.E. McAmis, Inc. v. United States*, No. 22-570, 2023 WL 2657005, at *5 (Fed. Cl. Mar. 10, 2023) (citing cases). In assessing the arguments presented, "[t]he Court 'must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff.'"

4

*Id.* (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). Any disputed facts must be resolved if material to determining the Court's authority to adjudicate the merits of plaintiff's claims. *H&M Assocs., LLC v. United States*, __ Fed. Cl. __, No. 22-110, 2023 WL 2727621, at *4 (Fed. Cl. Mar. 31, 2023) (citing cases).

## II.    Accrual Date

Under the CDA, "[a] claim accrues . . . as of 'the date when all events[] that fix the alleged liability of either the Government or the contractor and permit assertion of the claim[] were known or should have been known." *Bowman Const. Co. v. United States*, 154 Fed. Cl. 127, 136 (2021) (quoting *Elec. Boat Corp. v. Sec'y of Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020)). At this juncture, the precise accrual date(s) of MCDA's purported claims against the government is not clear. However, as pled in the complaint, the last alleged government-caused delay occurred in connection with DLA's final acceptance of the construction and maintenance drawings on February 10, 2015. This moment is critical since, under the terms of the contract, the drawings were due "within 30 calendar days *after completion of the work*." ECF 1-1 at 27 (emphasis added). Regardless of when MCDA actually knew of the events giving rise to a CDA claim, the company should have been aware of them by the time the work was completed and accepted by DLA.

## III.   Certified Claim

In defining a "claim" under the CDA, the Federal Circuit has adopted the definition articulated in the Federal Acquisition Regulation (FAR):

> "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract."

*Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367 (Fed. Cir. 2022) (quoting 48 C.F.R. § 52.233-1(c)) (citing *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011)). Moreover, where, as here, the contractor seeks more than $100,000, the contractor is statutorily required to certify:

> "(A) the claim is made in good faith;
>
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
>
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and

>(D) the certifier is authorized to certify the claim on behalf of the contractor."

*Id.* (quoting 41 U.S.C. § 7103(b)(1); citing 48 C.F.R. § 52.233-1(d)(2)(iii)).[5] Finally, while no magic language is required, the contractor must request or otherwise objectively seek a final decision from the contracting officer addressing the contractor's entitlement to the claimed amount. *Zafer*, 40 F.4th at 1367 (quoting *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010)).

### A. Initial REA

MCDA's May 8, 2017 REA, although timely, does not qualify as a certified claim under the CDA. First, the submission is devoid of any certification or representations required under the CDA. Second, the submission states on its face that it is not a CDA claim. *See* ECF 1-2 at 36 ("[W]e reserve the right to present this request as a formal claim pursuant to the Contract Disputes Act."). Third, although the submission seeks a sum certain (i.e., $405,929.21) for unabsorbed corporate overhead, the correspondence notes–but does not seek reimbursement of– additional specific and generalized sums (i.e., $108,180.93 for jobsite unabsorbed overhead, unspecified vendor and subcontractor claims).

With regard to the timing of the requisite certification, to qualify as a CDA claim a document must be certified (even if determined to be defective) at the time it is presented to the contracting officer. This principle is implicit in § 7103(b)(3), which states in relevant part:

>A contracting officer is not obligated to render a final decision on a claim of more than $100,000 that is not certified in accordance with [Section 7103(b)(1)] if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective.

41 U.S.C. § 7103(b)(3).[6] Although § 7103(b)(3) provides for the correction of a defective certification, there is no such allowance for a submission devoid of any certification. As recently stated by this Court: "Although a 'defective certification' does not deprive the Court of jurisdiction, a failure to certify

---

[5] In contrast, requests for equitable adjustments "require certification of only (A) and (B)." *Zafer*, 40 F.4th at 1367 (citing 48 C.F.R. § 252.243-7002(b)).

[6] In this case, by letter dated July 6, 2017, the contracting officer timely notified MCDA of the contractor's failure to certify the May 8, 2017 REA. *See* ECF 1-2 at 47 ("Finally, MDCA's request for equitable adjustment must be certified in accordance with [Defense Federal Acquisition Regulation Supplement (DFARS)] 243-204.71 and 252.243-7002 and 10 U.S.C. § 2410. DFAS cannot issue a decision regarding MDCA's request until it has been properly certified as required by law.").

does." *H&M Assocs.*, __ Fed. Cl. at __, 2023 WL 2727621, at *5 (quoting 41 U.S.C. § 7103(b)(3); citing 48 C.F.R. § 33.201 ("Failure to certify shall not be deemed to be a defective certification."); *accord* 48 C.F.R. § 2.101 ("[A] written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under 41 U.S.C. chapter 71, Contract Disputes, until certified as required by the statute."). As the Federal Circuit has explained, certification is an important part of the CDA statutory scheme because it imposes potential liability on the contractor for fraudulent claims. *See Hejran Hejrat Co. v. U.S. Army Corps of Eng'rs*, 930 F.3d 1354, 1358 (Fed. Cir. 2019) (quoting *Skelly & Loy v. United States*, 685 F.2d 414, 418 n.11 (Ct. Cl. 1982)).

  B. *Revised REA*

  MCDA's March 1, 2021 revised REA, as further certified on May 6, 2021, satisfies the statutory and regulatory requirements of a CDA claim. The March 1, 2021 writing seeks a sum certain ($855,038) for increased labor, equipment, and overhead costs attributable to alleged government (in)actions and delays. Unlike the initial REA, the revised submission includes a certification, digitally signed by MCDA's president. The March 1, 2021 certification complies with 48 C.F.R. § 252.243-7002, which governs the certification requirements for REAs; it does not, however, include two elements of a properly certified CDA claim–i.e., attesting to the accuracy of the government's liability and the authority of the certifier, 41 U.S.C. § 7103(b)(1)(C)–(D). The deficient certification was cured through MCDA's May 6, 2021 submission, which includes all four elements of a duly certified CDA claim under 41 U.S.C. § 7103(b)(3).

  With regard to the CDA requirement that the contractor request a contracting officer's final decision, any claimed deficiency in MCDA's March 1, 2021 submission was similarly cured by MCDA's specific demands on April 1, and May 6, 2021.[7] For the reasons stated in Section IV, the precise timing of MCDA's

---

[7] Although unnecessary to decide given the initially deficient certification and subsequent cure of both issues, MCDA's March 1, 2021 submission likely satisfies the CDA requirement of requesting a contracting officer's final decision. Where, as here, the parties are engaged in a contract dispute and the contractor submits a specific demand for payment, courts have generally inferred a request for a decision. *See Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992) ("This court is loathe to believe . . . a reasonable contractor would submit to the contracting officer a letter containing a payment request after a dispute had arisen solely for the contracting officer's information and without at the very least an implied request that the contracting officer make a decision as to entitlement. Any other finding offends logic."); *e.g., Zafer*, 40 F.4th 1365 (finding duly certified REA that "meticulously" alleged changes and delays and requested a sum certain was a request for final decision); *Hejran Hejrat Co. v. U.S. Army Corps of Eng'rs*, 930 F.3d 1354 (Fed. Cir. 2019) (finding REA which requested "specific amounts of compensation for each of the alleged grounds" and which was accompanied by a "sworn statement" attesting to its truth was a request for final decision).

perfection of its CDA claim on or after March 1, 2021 is purely academic in resolving the pending dispositive motion.

## IV. Application of *Sikorsky*

As noted at the outset of this opinion, in *Sikorsky*, the Federal Circuit held that the six-year time limit for contractors to submit a certified claim in § 7103 is not jurisdictional. *See* 773 F.3d at 1322. Accordingly, the government's motion to dismiss under RCFC 12(b)(1) must be denied. *See, e.g., Advanced Power Sols., Inc. v. United States*, No. 20-137, 2022 WL 839809, at *2 (Fed. Cl. Mar. 22, 2022).

Conversion of defendant's dispositive motion into a motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6) is belied by the record presented.[8] As noted above, on January 8, 2021–a month before the outside six-year deadline of February 10, 2021–MCDA requested the opportunity to submit a revised REA. DLA authorized MCDA's request and, thereafter, twice extended the submission deadline to March 1, 2021. MCDA met the extended deadline, albeit with a questionably imperfect certified CDA claim. Nevertheless, as noted *supra*, at this stage, the Court must view the facts in the light most favorable to MCDA.

Defendant's jurisdictional argument regarding MCDA's alleged breach of the duty of good faith and fair dealing (i.e., Count II) is similarly unavailing. In MCDA's April 1, 2021 communication, the contractor pointedly accused the DLA of acting in "bad faith" in not considering plaintiff's requests for relief, particularly after purportedly committing to do so in the preceding months. Put simply, as in *Aires Constr. Corp. v. United States*, 164 Fed. Cl. 290 (2023), "[p]laintiff gave the contracting officer notice of facts sufficient to put him on notice that denial of the CDA claim could breach the duty of good faith and fair dealing." *See id.* at 297.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF 6) is **DENIED**.

---

[8] In its opening brief, the government relies exclusively on RCFC 12(b)(1). *See* ECF 6 at 5 ("Pursuant to Rule 12(b)(1) . . ., defendant, the United States, respectfully requests that the Court dismiss plaintiff [MCDA's] complaint for lack of jurisdiction."). In its reply brief, the government seemingly shifts its position with respect Count I of the complaint and cites RCFC 12(b)(6) for the first time and without substantive discussion. *See* ECF 10 at 7 ("These claims are time-barred, and the Court should therefore dismiss Count I of the complaint under RCFC 12(b)(6).").

It is so ORDERED.

                                                               _____
                                                               Armando O. Bonilla
                                                               Judge